IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ADVANCE COLORADO,
a Colorado non-profit,

GEORGE HANKS "HANK" BROWN,
An individual,

STEVEN WARD,
an individual,

CODY DAVIS,
an individual,

JERRY SONNENBERG,
an individual,

and

CARRIE GEITNER,
an individual,

Plaintiffs,

v.

JENA GRISWOLD, in her official capacity as
Secretary of State of Colorado,

and

JARED POLIS, in his official capacity as
Governor of Colorado,

Defendant.

# COMPLAINT

The State of Colorado has mandated that all citizen-initiated ballot measures that would cut taxes must include, at the beginning of the ballot title, that the initiative "will reduce funding for state expenditures that include but are not limited to health and human services programs, K-

education, and corrections and judicial operations." *See* Ballot Measure Fiscal Transparency Act of 2021, H-B 21-1321, codified at C.R.S. § 1-40-106.

This "poison-pill language" is unconstitutional compelled speech and violates Plaintiffs' "First Amendment right to present their message undiluted by views they [do] not share." *303 Creative LLC v. Elenis*, No. 21-476, 600 U. S. ___ (June 30, 2023), slip. op at 8.  Furthermore, "the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as core political speech …. in which the importance of First Amendment protections is at its zenith." *Meyer v. Grant*, 486 U.S. 414, 421-22, 425 (1988).

Worse, the poison-pill mandatory language is tantamount to compelled *false* speech.  Even under the most favorable circumstances, the language mandated by the Colorado General Assembly is never strictly and necessarily accurate; there is no guarantee that a reduction in tax rates "will reduce funding" for any particular state program.  And it is provably and mathematically false as applied to the two initiatives that Plaintiff Advance Colorado is currently approved to circulate for the 2023-2024 ballot, which do not cut State general fund revenue at all.

## I.  PARTIES

1. Plaintiff Advance Colorado is a Colorado non-profit.  It regularly sponsors and collects signatures for statewide citizen initiatives relating to a range of issues, including taxation.

2. Senator George Hanks "Hank" Brown is a registered voter in Denver County and former United States Senator for the State of Colorado and former president of University of Colorado, highlights of a more than six-decade career in public service to Colorado.  He has supported ballot measures to promote fiscal responsibility.

3. Steven Ward is a registered elector in Arapahoe County, Colorado and a proponent of two citizen initiatives that are the subject of this Complaint.

4.     Cody Davis is a county commissioner and registered elector in Mesa County, Colorado and has been a proponent of past citizen initiatives.

5.     Jerry Sonnenberg is a county commissioner and registered elector in Logan County, Colorado and has been a proponent of past citizen initiatives.

6.     Carrie Geitner is a county commissioner and registered elector of El Paso County.

7.     Jena Griswold is the Colorado Secretary of State and is being sued in her official capacity because the Secretary of State is generally responsible for the electoral process in Colorado and because specifically, the Colorado Ballot Title Setting Board ("Title Board") is convened by the Secretary of State as required by § 1-40-106, C.R.S.

8.     Jared Polis is Governor of Colorado and is being sued in his official capacity.

## II. JURISDICTION, VENUE AND STANDING

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case brings claims under the Constitution of the United States.

10.    Venue is proper in the District of Colorado pursuant to 28 U.S.C § 1391 because all parties are citizens of Colorado.

11.    Advance Colorado has standing to bring this claim because it is currently in the process of sponsoring two separate initiatives that are subject to the unconstitutional requirements challenged here.  The ballot titles for these two initiatives have been set by the Title Board for the 2023-2024 ballot cycle, and Advance Colorado has been approved to circulate these petitions to collect signatures.   The two initiatives are attached to this Complaint as Exhibits A and B.  Plaintiff Steven Ward is a named Proponent of these two initiatives.

12.    The challenged ballot title language will force Advance Colorado and its petition circulators to present and advocate for a citizen initiative that contains a title that they believe to

3

be false and untrue. The only alternative would be to abandon their right under the Constitution of the State of Colorado to propose and advocate for a lawful citizen initiative.

13. This compelled speech, in and of itself, violates Advance Colorado's First Amendment rights and is a concrete and particularized injury sufficient to support standing.

14. Furthermore, a requirement that the title of the initiative itself include a prominent disclaimer that the initiative "will" reduce funding for government-specified issues and programs has the practical effect of making it much more difficult, if not impossible, to persuade voters to provide the signatures necessary to place the measure on the ballot, which is also a concrete and particularized injury sufficient to support standing.

### III.  FACTUAL ALLEGATIONS

#### A. The Mandated Speech

15. The Colorado Constitution reserves to the people "the power to propose laws and amendments to the constitution and to enact or reject the same at the polls independent of the general assembly." Colo. Const. art. V, § 1. "Neither the general assembly nor its committees or agencies shall have any power to require the amendment, modification, or other alteration of the text of any such proposed measure or to establish deadlines for the submission of the original draft of the text of any proposed measure." *Id*.

16. "No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title." *Id*. "The title for the proposed law or constitutional amendment . . . shall correctly and fairly express the true intent and meaning thereof." C.R.S. 1-40-106(3)(b). The purpose of this title is "to capture, in short form, the proposal in plain, understandable, accurate language enabling informed voter choice." *In re Proposed Initiative for 1999-2000 No. 29*, 972 P.2d 257, 266 (Colo. 1999).

4

17. Because Colorado law has always provided that the proponents of a ballot measure may advocate for a measure of their own drafting and choosing, and that the ballot title will accurately express the true intent and meaning of this measure, voters and prospective signatories understand the ballot title to summarize the intent of the proponents of that ballot measure – not to reflect the views of the majority party in the Colorado General Assembly.

18. In 2021, the Colorado Generally Assembly passed a law which provided that "for measures that reduce state tax revenue through a tax change, the ballot title must begin 'shall there be a reduction to the (description of tax) by (the percentage by which the tax is reduced in the first full fiscal year that the measure reduces revenue) thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to (the three largest areas of program expenditure) by an estimated (projected dollar figure of revenue reduction to the state in the first full fiscal year that the measure reduces revenue) in tax revenue?"  Ballot Measure Fiscal Transparency Act of 2021, H.B. 21-1321, codified at C.R.S. § 1-40-106 ("H.B 21-1321").

19. This legislation mandates that the ballot title "***must begin***" with this language and that it must state that the tax change "***will reduce funding***" for these specified programs. *Id.* (emphasis added).  Not, "*may reduce funding*," but "*will reduce funding*."  *Id*. (emphasis added). The only exception is if the measure includes cuts to specific, identified programs.  *Id*.

20. The Title Board has held that it has no discretion to edit or eliminate this language even under circumstances where the members of the Title Board do not believe that it accurately describes the measure at issue.  *See* Audio of the October 20, 2021 Rehearing, Board Member Pelegrin at 10:46, available at https://archive-video.granicus.com/csos/csos_b1e2491d-ffab-458a-b33a-140192a0f905.mp3 ("I also agree that obviously, we have to follow the statute.  But I think, to the extent we can follow the statute and still try to make it clear, I think we should try to make it clearer…").

5

21. During the debates over the passage of this legislation, proponents spoke candidly about their intent to interfere with the ability of their political opponents to advocate for and pass citizen initiatives that contradict the political preferences of the majority party in the General Assembly.

22. For example, Representative Chris Kennedy, a Lakewood Democrat who is a principal sponsor of the measure, described it as a is a "stop-the-bleeding" bill: "What we've seen, increasingly, is that Republicans, who have not been successful at winning majorities here at the Capitol in recent years, are increasingly turning their attention to the ballot and using that as a way to try to get government closer to the size that can be drowned in a bathtub," he said. "We'd prefer that government not drown in the bathtub.  We'd prefer that ballot measures don't continue to chip away at our ability to fund our public schools and the other priorities that the voters of the state care about."  Jesse Paul, [Colorado Democrats Want to Use One of TABOR's Most Effective Tax-Halting Mechanisms for Themselves](#), The Colorado Sun, May 21, 2021.

23. Plaintiff Advance Colorado is currently the sponsor of Colorado Proposed Initiative 2023-2024 #21 ("Initiative 21") and Colorado Proposed Initiative 2023-2024 #22 ("Initiative 22").[1]

**B.  Initiative 22**

24. On April 5, 2023, the Title Board conducted a hearing Proposed Initiative 2023-2024 #22 and set its title:

> There shall be a reduction to the state sales and use tax rate by 0.34 percent, thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to education, health care policy and financing, and higher education by an estimated $17.7 million in tax revenue, by a change to the Colorado Revised Statutes that temporarily reduces the state sales and use tax

---

[1] Because Colorado law requires two registered voters to act as Proponents of an initiative, the listed proponents on the measure are Suzanne Taheri, acting as legal counsel for Advance Colorado, along with Plaintiff Steven Ward.

rate from 2.90 percent to 2.89 percent from July 1, 2024, through June 30, 2025.

25. On April 12, 2023, Advance Colorado filed a Motion for Rehearing on Initiative 2023-2024 #22 before the Title Board, attached to this Complaint as Exhibit C (compilation Exhibit, including the Title Board's Order on Rehearing).

26. In the Motion for Rehearing, Advance Colorado argued that this title was inaccurate "[g]iven the economic projections, there are no circumstances under which the proposed state sales tax reduction can be reasonably expected to reduce funding for education, health care policy and financing, or higher education."  *Id*.

27. The reason why Initiative 22 will not reduce general fund revenue is that it is a *de minimus*, 0.01% sales tax cut that would only be in effect for a single year, and that year is projected to have tax revenue high enough to trigger a substantial refund under the Taxpayer's Bill of Rights, Colo. Const. art X, § 20. ("TABOR").

28. The official Fiscal Summary prepared by the non-partisan Colorado Legislative Council Staff states that "[b]ased on current forecasts, the measure is expected to reduce the amount of revenue required to be refunded to taxpayers under TABOR, with no net impact on the amount available for the budget."  Initiative 22 Fiscal Summary, Colorado Legislative Council Staff  (April 19, 2023), attached to this Complaint as Exhibit D.

29. This is not a close call.  The TABOR refund is projected to exceed $1.97 billion, while the sales tax cut would reduce revenue by only $17.7 million.  These estimates would need to be inaccurate by an order of magnitude for Initiative 22 to have even a small impact on the state budget.

30. Upon rehearing, the Title Board set the final title as:

7

> There shall be a reduction to the state sales and use tax rate by 0.61 percent,[2] thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to education, health care policy and financing, and higher education by an estimated $101.9 million in tax revenue, by a change to the Colorado Revised Statutes concerning a reduction in state sales and use taxes, and, in connection therewith, reducing the state sales and use tax rate from 2.90 percent to 2.89 percent from July 1, 2024, through June 29, 2025, and eliminating the state sales and use tax for one day on June 30, 2025.

Exhibit C at 6.

31. Advance Colorado has exhausted its remedies through the Colorado administrative process.

32. Advance Colorado has also exhausted its judicial remedies under Colorado law, through an appeal of the title set for a nearly-identical proposition during the previous election cycle.

33. During the 2021-2022 election cycle, Advance Colorado sponsored a Colorado Proposed Initiative 2021-2022 # 46 ("Initiative 46"), attached to this Complaint as Exhibit E. Initiative 46 was almost identical to Initiative 22, except that it would have cut sales taxes in a different fiscal year.

34. The title for Initiative 46 was set by the Title Board in a Hearing on October 6, 2021. In a hearing on a Motion for Reconsideration on October 20, 2021, the Title Board adjusted the titles but did not remove the disputed language or incorporate the clarifications proposed by Advance Colorado. The proceedings before the Title Hearing Board are attached as Exhibit F.

35. Advance Colorado filed a Petition for Review of Final Action of Ballot Title Setting Board Concerning Proposed Initiative 2021-2022 #46 in the Colorado Supreme Court, No. 2021-SA-316.

---

[2] The fiscal note identified a single day where no tax would be collected, leading to a revised number.

8

36.     In an Order dated April 14, 2022, the Colorado Supreme Court stated: "Upon consideration of the Petition for Review, together with the briefs filed herein, and now being sufficiently advised in the premises, IT IS ORDERED that the actions of the Title Board are AFFIRMED."  This Order is attached to this Complaint as <u>Exhibit G</u>, along with the associated briefing.

37.     Advance Colorado chose not to circulate Initiative 46 and to instead move forward with an identical measure for the subsequent election cycle to allow adequate time for a legal challenge and the circulation of the measure.

**C.  Initiative 21**

38.     The second initiative that Advance Colorado is approved to circulate this year is Initiative 21, which does not reduce current taxes at all, but instead caps the *growth* in property taxes paid on a particular parcel to 3% a year unless there have been substantial physical improvements to the property.  It was drafted in response to the large increases in their property appraisals that many Colorado landowners have faced over the last few years, which have outstripped wage growth and present serious challenges to elderly homeowners living on a fixed income.

39.     On April 5, 2023, the Title Board conducted a hearing Proposed Initiative 2023-2024 #21 and set its title:

> Funding available for counties, school districts, water districts, fire districts, and other districts funded, at least in part, by property taxes shall be impacted by a reduction of $2.2 billion in property tax revenue by an amendment to the Colorado constitution and a change to the Colorado Revised Statutes concerning a 3% annual limit on property tax increases, and, in connection therewith, creating an exception to the limit if a property's use changes or its square footage increases by more than 10%, in which case, the property is reappraised, and, beginning in fiscal year 2024-25, allowing the state to annually retain and spend up to $100 million of excess state revenue, if any, as a voter-approved revenue change to offset

9

> reduced property tax revenue and to reimburse local governments for fire protection.

<u>Exhibit H</u> at 7 (compilation exhibit of Motion for Rehearing and Order for Initiative 2023-2024 #21) .

40. Advance Colorado filed a Motion for Rehearing, In the Matter of the Title and Ballot Title and Submission Clause For Initiative 2023-2024 #21 before the Title Board on April 12, 2023. *See* Exhibit H.

41. In that Motion, Advance Colorado argued that the title was misleading because it characterized the measure as a "a reduction of $2.2 billion in property tax revenue," when it merely "it decreases the growth of property tax revenue." *Id*. And, because this growth would be subject to TABOR, it would ultimately be remitted to the taxpayers absent a change of law. *Id*.

42. Because of H.B. 21-1321, the Title Board was "was prevented from properly describing the $2.2 billion as a reduction in the growth of the taxes that must be remitted by taxpayers rather than the taxing districts receiving $2.2 billion less from one year to the next." *Id*.

43. In his signing statement (<u>Exhibit I</u> hereto)., dated July 7, 2021, Governor Jared Polis stated that he did not believe that the H.B. 21-1321 properly applied to measure that slow revenue growth, rather than cutting revenue by a determinable amount.

**D. The Circulation and Signature Collection Process**

44. The ballot title is a short, clear statement of the change in law that the proponents of an initiative are advocating.

45. Circulators take their proposed initiative with its ballot title on top and in all caps and speak with registered voters, seeking sufficient signatures to place the measure on the ballot.

46. Circulators speak in their own voices to explain the measure, but also show the official document with the ballot title to voters who will see this document and sign it.

10

47. These conversations are often short and hurried, a brief interaction on the street or outside of store, so it is crucial that speakers be allowed to communicate in a manner that is quick and straightforward.  Many potential signatories are relatively unsophisticated and lack a detailed understanding of Colorado tax law and budgeting practices.

48. Although it has elements of government speech, a ballot title is fundamentally the speech of the citizens proposing and supporting the initiative – an official summary of the change of law that they have proposed and wish to place on the ballot and see enacted.

49. H.B. 21-1321 places proponents in the position of circulating a document that they believe mischaracterizes their position in a situation where such speech will either be mistaken for their own speech or be mistaken for the evaluation of non-partisan body as to the content of their chosen speech.

50. It is extremely difficult to simultaneously advocate for an initiative and argue that its title is inaccurate, especially in the often-hurried context of a petition circulation.

51. Instead of explaining their petition and advocating for its adoption, circulators and advocates will be forced to spend their time explaining why the ballot title is incorrect in stating that their initiative will be harmless to education – allowing their political opponents to shape and direct the discussion by government fiat.

52. The location of this speech in the title of the petition will create a strong imprimatur of regularity and official accuracy.

53. Because of the longstanding reputation of the Title Board as a neutral, non-partisan body that is dedicated to accurately and simply conveying the position of the proponents of an initiative, the language in the title will have outsized impact on the potential signatories on voters – although the new language was adopted by a partisan political body on a party-line vote.

54. The location of the mandated speech in front of the chosen speech of the petition's proponents prevents them from exercising their First Amendment right not only to speak and refrain from speaking, but to select which ideas to emphasize and how to frame them.

## CLAIM ONE
## (42 U.S.C. § 1983)
## FIRST AMENDMENT – FACIAL CHALLENGE

55. Plaintiffs reallege and incorporate by reference the allegations contained in this Complaint.

56. H.B. 21-1321 provides that "for measures that reduce state tax revenue through a tax change, the ballot title must begin 'shall there be a reduction to the (description of tax) by (the percentage by which the tax is reduced in the first full fiscal year that the measure reduces revenue) thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to (the three largest areas of program expenditure) by an estimated (projected dollar figure of revenue reduction to the state in the first full fiscal year that the measure reduces revenue) in tax revenue." Ballot Measure Fiscal Transparency Act of 2021, H.B. 21-1321, codified at C.R.S. § 1-40-106 ("H.B 21-1321").

57. This requires any person seeking to propose a citizen initiative reducing taxes to place at the front of its communication to the public a statement that its initiative "will reduce funding" for specified popular programs.

58. This speech is mandatory, and a proponent is not able to circulate a petition on this subject without also promulgating this speech.

59. It requires persons advocating a change of law to not only argue their opponent's position, but to place that position front and center, ahead of their own speech, and locate it in the title of their own petition where it has a strong imprimatur of importance and regularity.

60. The First Amendment of the United States Constitution protects the right of the people both to speak and to remain silent.

61. The government may not set the terms of political debate by statute.

62. H.B. 21-1321 is a regulation of core political speech, subject to strict scrutiny. It is neither viewpoint neutral nor content neutral.

63. H.B. 21-1321 is a regulation of the speech regarding a ballot initiative, subject to the restrictions of the First Amendment, not a regulation of electoral procedure. *See Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1211 (10th Cir. 2002)("In other words, the right to free speech and the right to vote are not implicated by the state's creation of an initiative procedure, but only by the state's attempts to regulate speech associated with an initiative procedure").

64. H.B. 21-1321 is compelled speech in violation of the First Amendment of the United States Constitution.

65. It is unconstitutional on its face.

66. This Court should issue Declaratory Judgment that H.B. 21-1321 is unconstitutional and unenforceable in its entirety.

67. This Court should issue an injunction requiring the Title Board to issue a new title to Initiative 21 and Initiative 22 that does not include the language set forth in H.B 21-1321 and that states the content of the initiatives clearly, simply and accurately.

**CLAIM TWO**
**(42 U.S.C. § 1983)**
**FIRST AMENDMENT – AS APPLIED**

68. Plaintiffs reallege and incorporate by reference the allegations contained in this Complaint.

69. H.B. 21-1321 provides that "for measures that reduce state tax revenue through a tax change, the ballot title must begin 'shall there be a reduction to the (description of tax) by (the

13

percentage by which the tax is reduced in the first full fiscal year that the measure reduces revenue) thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to (the three largest areas of program expenditure) by an estimated (projected dollar figure of revenue reduction to the state in the first full fiscal year that the measure reduces revenue) in tax revenue." Ballot Measure Fiscal Transparency Act of 2021, H.B. 21-1321, codified at C.R.S. § 1-40-106 ("H.B 21-1321").

70. This requires any person seeking to propose a citizen initiative reducing taxes to place at the front of its communication to the public a statement that its initiative "will reduce funding" for specified popular programs.

71. This speech is mandatory, and a proponent is not able to circulate a petition on this subject without also promulgating this speech.

72. It requires persons advocating a change of law to not only argue their opponent's position, but to place that position front and center, ahead of their own speech, and locate it in the title of their own petition where it has a strong imprimatur of regularity.

73. The First Amendment of the United States Constitution protects the right of the people both to speak and to remain silent.

74. The government may not set the terms of political debate by statute.

75. H.B. 21-1321 is a regulation of core political speech, subject to strict scrutiny. It is neither viewpoint neutral nor content neutral.

76. H.B. 21-1321 is a regulation of the speech regarding a ballot initiative, subject to the restrictions of the First Amendment, not a regulation of electoral procedure. *See Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1211 (10th Cir. 2002)("In other words, the right to free speech and the right to vote are not implicated by the state's creation of an initiative procedure, but only by the state's attempts to regulate speech associated with an initiative procedure").

77. H.B. 21-1321 is compelled speech in violation of the First Amendment of the United States Constitution.

78. The compelled speech is false and inaccurate and applied to Initiatives 21 and 22.

79. Even if H.B 21-1321 were defensible in situations where it provides accurate information to voters; it is unconstitutional as applied to situations in which the mandatory information is not strictly true and accurate.

80. There is no rational basis for requiring ballot titles to include false information, and certainly no compelling government interest.

81. H.B 21-1321 is unconstitutional as applied to Initiative 21 and Initiative 22.

82. This Court should issue Declaratory Judgment stating that H.B. 21-1321 is unconstitutional as applied to as applied to Initiative 21 and Initiative 22.

83. This Court should issue an injunction requiring the Title Board to issue a new title to Initiative 21 and Initiative 22 that does not include the language set forth in H.B 21-1321 and that states the content of the initiatives clearly, simply and accurately.

### CLAIM THREE
### COLO. CONST. ART.V, § 1

84. Plaintiffs reallege and incorporate by reference the allegations contained in this Complaint.

85. H.B. 21-1321 provides that "for measures that reduce state tax revenue through a tax change, the ballot title must begin 'shall there be a reduction to the (description of tax) by (the percentage by which the tax is reduced in the first full fiscal year that the measure reduces revenue) thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to (the three largest areas of program expenditure) by an estimated (projected dollar figure of revenue reduction to the state in the first full fiscal year that the measure reduces revenue)

15

in tax revenue." Ballot Measure Fiscal Transparency Act of 2021, H.B. 21-1321, codified at C.R.S. § 1-40-106 ("H.B 21-1321").

86. The Colorado Constitution requires the ballot titles of citizen initiatives to have a clear title which expresses the subject of the initiative. Colo. Const. art. V, § 1 ("No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title")

87. H.B. 21-1321 violates this constitutional requirement by mandating language that is factually inaccurate and that does not reflect the subject of the initiative.

88. It is unconstitutional both on its face and as applied.

89. This Court should issue an injunction requiring the Title Board to issue a new title to Initiative 21 and Initiative 22 that does not include the language set forth in H.B 21-1321 and that states the content of the initiatives clearly, simply and accurately.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the above allegations, Plaintiffs respectfully request that this Court grant the following relief:

A. A final judgment in favor of Plaintiffs declaring that H.B 21-1321 is in violation of the First Amendment Constitution of the United States;

B. A final judgment in favor of Plaintiffs declaring that H.B 21-1321 is in violation of the First Amendment Constitution of the United States as applied to Initiative 21 and Initiative 22;

C. A final judgment in favor of Plaintiffs declaring that H.B 21-1321 is in violation of the clear title Requirement in Article V, Section 1 of the Constitution of the State of Colorado;

D. An injunction requiring Secretary of State Griswold to convene the Colorado Ballot Title Setting Board to issue a new title to Initiative 21 and Initiative 22 that does not include the

language set forth in H.B 21-1321 and that states the content of the initiatives clearly, simply and accurately;

E. Judgment in favor of Plaintiffs and against the Defendants on all claims;

F. An order awarding Plaintiffs' costs, interests, and attorneys' fees incurred in connection with the commencement and prosecution of this action; and

G. Such other relief as the Court deems just and reasonable.

**GREENBERG TRAURIG, LLP**
*s/Jennifer H. Weddle*
Troy A. Eid
Jennifer H. Weddle
Harriet McConnell Retford
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
(303) 572-6500
eidt@gtlaw.com
weddlej@gtlaw.com
retfordh@gtlaw.com
*Counsel for Plaintiffs*

17