# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ADVANCE COLORADO,<br>a Colorado non-profit,<br><br>GEORGE HANKS "HANK" BROWN,<br>An individual,<br><br>STEVEN WARD,<br>an individual,<br><br>CODY DAVIS,<br>an individual,<br><br>JERRY SONNENBERG,<br>an individual,<br><br>and<br><br>CARRIE GEITNER,<br>an individual,<br><br>Plaintiffs,<br><br>v.<br><br>JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,<br><br>and<br><br>JARED POLIS, in his official capacity as Governor of Colorado,<br><br>Defendants. | Civil Action No. 23-CV-01999-SKC |

## MOTION FOR PRELIMINARY INJUNCTION

The Colorado legislature has passed a new law mandating that the ballot titles on citizen initiatives that reduce tax rates must include prominent standardized language that does not accurately represent the content of the initiative as it was drafted by its proponents. Ballot Measure

Fiscal Transparency Act of 2021, H-B 21-1321, codified at C.R.S. § 1-40-106 ("C.R.S. § 1-40-106"). This is compelled speech – *compelled false speech* – in violation of the First Amendment of the United States Constitution.

Plaintiff Advance Colorado is currently circulating two petitions that include language that it believes to be false and misleading, Colorado Proposed Initiative 2023-2024 #21 ("Initiative 21") and Colorado Proposed Initiative 2023-2024 #22 ("Initiative 22"). Initiative 21 **is due on November 20, 2023**, Colorado Secretary of State, 2023-2024 Initiative Filings, Agendas & Results, and Initiative 22 is due on **October 23, 2023**. *See* https://www.sos.state.co.us/pubs/elections/Initiatives/titleBoard/; C.R.S. § 1-40-108 ("No petition for any ballot issue is of any effect unless filed with the secretary of state within six months from the date that the titles and submission clause have been fixed and determined pursuant to the provisions of sections 1-40-106 and 1-40-107 and unless filed with the secretary of state no later than three months before the election at which it is to be voted upon"). Before these deadlines, Plaintiffs must collect 124,238 signatures. *See* Colo. Const. Art. Article V, § 1(2) (The number of signatures required for a statewide initiative petition is "at least five percent of the total number of votes cast for all candidates for the office of secretary of state at the previous general election"). Advance Colorado is currently circulating two petitions that include that include language that it believes to be false and misleading because it is otherwise impossible to secure sufficient signatures in time. For that reason, Plaintiffs respectfully request this Court's urgent consideration of this matter.

Furthermore, this case is ideally suited for determination on a preliminary injunction motion because the relevant facts are straightforward and a matter of public record. The "poison pill" statute, C.R.S. § 1-40-106, is unconstitutional on its face, as this Court will be able to determine as a pure question of law without any need for the development of a factual record. And

2

even if this Court does not find the law facially unconstitutional, it is clear from facts that can be established simply from public sources, in particular the official Fiscal Summaries regarding these petitions that were prepared by the non-partisan Colorado Legislative Council Staff and the record before the Colorado Ballot Title Setting Board ("Title Board"), that this law is unconstitutional as applied to the petitions currently being circulated by Advance Colorado.  These same facts also establish that C.R.S. § 1-40-106 is in violation of Article V, Section 1 of the Constitution of the State of Colorado, which requires the official title of ballot initiative to clearly and accurately reflects its contents, which are chosen by the proponents themselves.

Plaintiffs respectfully request that this Court issue an injunction requiring the Secretary of State to convene the Title Board to issue new titles for the initiatives described below that state the content of those initiatives clearly, simply and accurately.

## I.  FACTS

In 2021, the Colorado Generally Assembly passed a law which provided that "for measures that reduce state tax revenue through a tax change, the ballot title must begin 'shall there be a reduction to the (description of tax) by (the percentage by which the tax is reduced in the first full fiscal year that the measure reduces revenue) thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to (the three largest areas of program expenditure) by an estimated (projected dollar figure of revenue reduction to the state in the first full fiscal year that the measure reduces revenue) in tax revenue?"  Ballot Measure Fiscal Transparency Act of 2021, advanced as H.B. 21-1321 and codified at C.R.S. § 1-40-106.

This legislation mandates that the ballot title "***must begin***" with this language and that it must state that the tax change "***will reduce funding***" for these specified programs.  *Id*. (emphasis added).  Not, "may reduce funding," but "***will reduce funding***." *Id*. (emphasis added).  The only exception is if the measure includes cuts to specific identified programs.  *Id*.  The Title Board has

found that it has no discretion to edit or omit this language even under circumstances where the members of the Title Board do not believe that it accurately describes the measure at issue. *See Audio of the October 20, 2021 Rehearing, Board Member Pelegrin at 10:46*, available at https://archive-video.granicus.com/csos/csos_b1e2491d-ffab-458a-b33a-140192a0f905.mp3. ("I also agree that obviously, we have to follow the statute. But I think, to the extent we can follow the statute and still try to make it clear, I think we should try to make it clearer…"). Upon appeal, the Colorado Supreme Court upheld this determination without comment. *Petition for Review of Final Action of Ballot Title Setting Board Concerning Proposed Initiative 2021-2022 #46 in the Colorado Supreme Court*, No. 2021-SA-316 (Colo. Apr. 14, 2022) ("IT IS ORDERED that the actions of the Title Board are AFFIRMED"), Complaint Ex. G at 85.[1]

Plaintiff Advance Colorado is currently the sponsor of Colorado Proposed Initiative 2023-2024 #22 ("Initiative 22") and Colorado Proposed Initiative 2023-2024 #21 ("Initiative 21").[2] After hearing and rehearing, the Title Board set the title for Initiative 22 as follows:

> There shall be a reduction to the state sales and use tax rate by 0.61 percent, thereby reducing state revenue, ***which will reduce funding for state expenditures that include but are not limited to education, health care policy and financing, and higher education by an estimated $101.9 million in tax revenue***, by a change to the Colorado Revised Statutes concerning a reduction in state sales and use taxes, and, in connection therewith, reducing the state sales and use tax rate from 2.90 percent to 2.89 percent from July 1, 2024, through June 29, 2025, and eliminating the state sales and use tax for one day on June 30, 2025.

Compl., Ex. C, Dkt. 1-4 at 6 (emphasis supplied).

The language in bolded italics is mandated by C.R.S. § 1-40-106 and is completely false and inaccurate. Initiative 22 is a *de minimus*, 0.01% sales tax cut that would only be in effect for

---

[1] The scope of review for appeals from the Title Board is limited by statute, C.R.S. § 1-40-107(2), and this decision does not have a preclusive effect on the issues before this Court. Specifically, the scope of review does not include constitutional challenges to the validity of state statutes under either the federal constitution or state constitution.

[2] Because Colorado law requires two registered voters to act as proponents of an initiative, the listed proponents on the measure are Suzanne Taheri, acting as legal counsel for Advance Colorado, along with Plaintiff Steven Ward.

a single year, *see* Complaint, Ex. A, Dkt. 1-2, and that year is projected to have tax revenue high enough to trigger a substantial refund under the Taxpayer's Bill of Rights, Colo. Const. art X, § 20. ("TABOR"). "In the current FY 2022-23, revenue is expected to exceed the Referendum C cap by $3.31 billion before exceeding the cap by $2.06 billion in FY 2023-24 and by $1.97 billion in FY 2024-25, even with high 2022 inflation resulting in a doubling of the growth rate used to calculate the FY 2023-24 Referendum C cap." The Colorado Council of Legislative Staff, Economic and Revenue Forecast, June 2023, https://leg.colorado.gov/sites/default/files/images/june2023forecast_1.pdf at 19. Any tax cut in fiscal year 2024-2025 up to $1.97 billion will come out of the TABOR refund, not the General Fund moneys available for state programs such as education. The official Fiscal Summary for Initiative 22 acknowledges this, "Based on current forecasts, the measure is expected to reduce the amount of revenue required to be refunded to taxpayers under TABOR, <u>with no net impact on the amount available for the budget</u>." Initiative 22 Fiscal Summary, Colorado Legislative Council Staff (April 19, 2023). Complaint Ex. D, Dk. 1-5 (emphasis added).

These are, of course, projections—not guarantees, and the precise numbers are unimportant. What is important is that proponents have been required by law to label their own initiative in a manner that is inconsistent both with their intent and the way that they would prefer to frame the issues and with the State's best official estimate of the initiative's actual effect. It is vanishingly unlikely that this particular measure will result in any actual cuts in education or healthcare spending, and the mandatory language to the contrary is a lie.

Initiative 21, which is also being circulated by Advance Colorado, does not cut taxes at all. Instead it caps the *growth* in property taxes paid on a particular parcel to 3% a year unless there have been substantial physical improvements to the property. *See* Complaint, Ex. B, Dkt. 1-3. It was drafted in response to the large increases in their property appraisals that many Colorado

5

landowners have faced over the last few years, which have outstripped wage growth and present serious challenges to elderly homeowners living on a fixed income.  The official title of Initiative 21, prominently states that:

> Funding available for counties, school districts, water districts, fire districts, and other districts funded, at least in part, by property taxes shall be impacted by a reduction of $2.2 billion in property tax revenue by an amendment to the Colorado constitution and a change to the Colorado Revised Statutes concerning a 3% annual limit on property tax increases …

Complaint Ex. H, Dkt. 1-9 at 7.  This is inaccurate because there is no reduction in revenue, only a reduction in the growth of revenue, and because any outsized growth in property tax revenue cause by skyrocketing real estate prices would ultimately be subject to the cap on revenue growth from TABOR.

The ballot title is a short, clear statement of the change in law that the proponents of an initiative are advocating.  Colo. Const. art. V, § 1 ("No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title").  Circulators take their proposed initiative with its ballot title on top and in all caps and speak with registered voters, seeking sufficient signatures to place the measure on the ballot.

Circulators speak in their own voices to explain the measure, but also show the official document with the ballot title to voters who will see this document and sign it.  These conversations are often short and hurried, a brief interaction on the street or outside of store, so it is crucial that speakers be allowed to communicate in a manner that is quick and straightforward.  Many potential signatories are commonly relatively unsophisticated and lack a detailed understanding of Colorado tax law and budgeting practices.

Although it has elements of government speech, a ballot title is fundamentally the speech of the citizens proposing and supporting the initiative – an official summary of the change of law that they have proposed and wish to place on the ballot and see enacted.  C.R.S. § 1-40-106 places

6

proponents in the position of circulating a document that they believe mischaracterizes their position in a situation where such speech will either be mistaken for their own speech or be mistaken for the evaluation of non-partisan body as to the content of their chosen speech. And this speech – presented as petition by citizens and <u>not the voice of the State</u> – will ultimately be circulated on the ballot to all registered voters.

## II. ARGUMENT

In considering whether to issue a preliminary injunction, this Court must consider: (1) whether Plaintiffs have a substantial likelihood of prevailing on the merits, (2) whether Plaintiffs face a threat of irreparable harm absent the injunction, (3) the balance between this harm and the injury that the injunction's issuance would inflict upon Defendants, and (4) the public interest. *American Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999). "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2011) (en banc) (internal quotation marks omitted). Accordingly, when plaintiffs are "likely to win on the merits of [their] First Amendment claim, a preliminary injunction is proper." *Id.* at 877; *Comprehensive Health of Planned Parenthood of Kan. v. Templeton*, 954 F. Supp. 2d 1205, 1215 n.14 (D. Kan. 2013) ("[I]n many First Amendment cases, courts focus first (or only) on the likelihood of prevailing on the merits") (collecting cases).

**A. Plaintiffs have a substantial likelihood of success on the merits.**

*1. The United States Constitution protects the right to speak and remain silent, especially in areas of core political speech.*

"[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v.*

7

*Maynard*, 430 U.S. 705, 714 (1977). Parties have "a First Amendment right to present their message undiluted by views they [do] not share." *303 Creative LLC v. Elenis*, No. 21-476, 600 U.S. ___ (June 30, 2023), slip. op at 8. Furthermore, "the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as core political speech … in which the importance of First Amendment protections is at its zenith." *Meyer v. Grant*, 486 U.S. 414, 421-22, 425 (1988).

"To state a compelled-speech claim, a plaintiff must establish three elements: (1) speech; (2) to which the speaker objects; that is (3) compelled by some governmental action." *Semple v. Griswold*, 934 F.3d 1134, 1143 (10th Cir. 2019). There is no room for dispute that C.R.S. § 1-40-106 compels specific speech, which is directly laid out in the text of the statute, or that Plaintiffs object to this speech.

    *2. C.R.S. § 1-40-106 impermissibly compels speech by private citizens.*

First Amendment challenges related to initiative procedures generally turn on the "speech" prong of the analysis, the question of whether the disputed law is a regulation of "speech associated with an initiative procedure," which is protected speech under the First Amendment, or regulation of the "petition process," which is not. *Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1211-12 (10th Cir. 2002). Although the initiative process is a creation of state law and not mandated by the federal constitution, "[t]he circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change," and comes firmly within the bounds of First Amendment. *Meyer*, 486 U.S. at 421.

The ballot title on a citizen initiative is best understood as speech by the proponents describing the change in law which they seek, not as government speech or as a regulation of the electoral process itself. The Colorado Constitution reserves to the people "the power to propose laws and amendments to the constitution and to enact or reject the same at the polls independent

8

of the general assembly." Colo. Const. art. V, § 1. "Neither the general assembly nor its committees or agencies shall have any power to require the amendment, modification, or other alteration of the text of any such proposed measure or to establish deadlines for the submission of the original draft of the text of any proposed measure." *Id*.

Thus, citizens may freely choose to advocate any proposed measure that they see fit, and neither the General Assembly nor the State's administrative agencies may require them to amend or alter it except that "[n]o measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title." *Id*. The title must clearly describe the contents of the text that the citizens drafted and proposed themselves – often over the political opposition of the party currently in power. It is not government speech because the government does not "bear[] the ultimate responsibility for the content of the [speech]," a right which is instead reserved to the proponents of the petition. *Wells v. City and County of Denver*, 257 F.3d 1132, 1142 (10th Cir. 2001).

The purpose of this title is "to capture, in short form, the proposal in plain, understandable, accurate language enabling informed voter choice." *In re Proposed Initiative for 1999-2000 No. 29*, 972 P.2d 257, 266 (Colo. 1999). Because Colorado law has always provided that the proponents of a ballot measure may advocate for a measure of their own drafting and choosing, and that the ballot title will accurately express the true intent and meaning of this measure, voters and prospective signatories understand the ballot title to summarizes the intent of the proponents of that ballot measure – not to reflect the views of the majority party in the Colorado General Assembly.

Obviously this is not unregulated speech. The ballot title must "correctly and fairly express the true intent and meaning thereof," C.R.S. 1-40-106(3) (b), an obligation that certainly does not apply to private speech in all contexts. However, this restriction is viewpoint neutral and

9

appropriate to the purpose of the forum – to communicate to potential signatories and voters a proposed change in law. Courts have observed "a distinction between, on the one hand, content discrimination, which may be permissible if it preserves the purposes of that limited forum, and, on the other hand, viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitations." *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819, 829-30 (1995). It is perfectly appropriate that Colorado law requires citizen initiatives to include a title that "correctly and fairly express[es] the true intent and meaning thereof," C.R.S. 1-40-106(3) (b), but it is not permissible to mandate specific language that highlights the arguments of partisan opponents of the resolution, particularly when that language is not truthful and accurate. The fact that the speech in this case is highly regulated actually aggravates the constitutional violation because citizens of Colorado have come to expect ballot titles to accurately reflect the contents of an initiative and they carry an imprimatur of official regularity that the legislature has hijacked for partisan purposes.

Furthermore, there is no government interest, compelling or otherwise, in mandating false and misleading speech. *See Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 882 (1992) (permitting the government to require doctors to provide "truthful and not misleading" information in the context of regulating medical practice). The mandatory language imposed by C.R.S. § 1-40-106, that any initiative that reduces tax rates "will reduce funding for state expenditures that include but are not limited to education, health care policy and financing, and higher education," *see* C.R.S. § 1-40-106 and Compl., Ex. C, Dkt. 1-4 at 6, is never strictly accurate even under the best of circumstances. There is no guarantee that a reduction in tax rates "will reduce funding" for any particular state program unless the initiative specifies such cuts. To ensure that this language can never be exactly accurately, the provisions specifies that "[t]he estimates reflected in the ballot title shall not be interpreted as restrictions of the state's budgeting process."

Colo. Rev. Stat. § 1-40-106(f).  It is the state legislature that ultimately decides how to allocate scarce funds among competing priorities.

In addition, Advance Colorado believes and would argue that maintaining a low tax, business-friendly environment will ultimately result in higher government revenues by attracting business to the state and encouraging economic growth.  Whether this Court agrees or disagrees, this is precisely the type of political disagreement that is protected by the First Amendment.  *Comprehensive Health of Planned Parenthood of Kan. v. Templeton*, 954 F. Supp. 2d 1205, 1216 (D. Kan. 2013) ("At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration and adherence").  The State has ample opportunity to express its own opinions regarding the fiscal impact of ballot measures through the official fiscal summary and through the political speech of members of the legislature, without placing speculative and partisan language in the mouths of proponents of the measure.

Any argument that this language is necessary as a matter of compelling government interest is undermined by the fact that Colorado legislature exempted itself from these requirements.  C.R.S. § 1-40-106  only applies to citizen initiatives, not to initiatives proposed to the voters by the legislature.  Colo. Rev. Stat. § 1-40-106(i) (II) (defining "tax change" for the purposes of these provisions as an "any initiated ballot issue or initiated ballot question that has a primary purpose of lowering or increasing tax revenues collected by a district" but not a "referred measure" with the same purpose.)  The Colorado legislature has, in fact, referred a measure to the current ballot that would have been subject to the mandatory language if it had been a citizen initiative without including the language required by C.R.S. § 1-40-106.  Senate Bill 23-303, § 3 (May 8, 2023).

*3. The statute is unconstitutional on its face and as applied.*

Thus, C.R.S. § 1-40-106 is unconstitutional on its face as a matter of law. But it is even more obviously unconstitutional as applied to the pending initiatives proposed by Advance Colorado, which absolutely do not, under any plausible circumstances, cut spending for any of the identified programs. Initiative 22 will result in small reduction in the TABOR refund, not the General Fund, *see* Compl., Ex. A, Dkt 1-2 (the text of Initiative 22) and Ex. D, Dkt 1-5 (the official Fiscal Summary), and the Initiative 21 does not cut taxes at all, instead slowing the growth rate above existing taxes, while still permitting property tax charges to grow at a rate that exceeds historic inflation rates, *see* Compl., Ex. B, Dkt. 1-3 (the text of Initiative 21). This is not a subtle question of fact that will require a careful presentation of witnesses to establish the economic effects of these measures – the legislature passed a blanket obligation to include mandatory language that even the state's own budget specialists do not think describes these initiatives. If the government is going to be permitted to require compelled speech in an area of core political speech then it at the very least has an obligation to very thoroughly and carefully ensure that the speech is exactly true and not subject to reasonable dispute.

*4. C.R.S. § 1-40-106 also violates the Colorado Constitution.*

Finally, C.R.S. § 1-40-106 also violates the provisions of the Colorado Constitution that reserves to the people the right to propose their own initiatives. The Colorado Constitution very clearly specifies that "[n]o measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title." Colo. Const. art. V, § 1. The purpose of this title is "to capture, in short form, the proposal in plain, understandable, accurate language enabling informed voter choice." *In re Proposed Initiative for 1999-2000 No. 29*, 972 P.2d 257, 266 (Colo. 1999). These requirements were adopted by the voters as a constitutional amendment in 1994 and mirror similar requirements imposed on bills enacted by the state legislature. *Id*. at 260. If there

is risk that the "voters cannot comprehend what is being proposed or could be misled or surprised," this is a violation of both the statutory law implementing the clear title rule and the constitutional requirement itself. *Id*. at 261. "Although the titles need not state every detail of an initiative or restate the obvious, they must not mislead the voters or promote voter confusion." *In re Ballot Title 1999-2000 No. 258(A)*, 4 P.3d 1094, 1099 (Colo. 2000). Stating that a measure would cut education spending when it would not definitely has the potential to mislead voters – indeed, that is its intended effect. "Titles that contain a material and significant omission, misstatement, or misrepresentation cannot stand." *Id*. (quotation omitted).

In addition, "[i]t is well established that the use of catch phrases or slogans in the title, ballot title and submission clause, and summary should be carefully avoided by the Board." *In re Amend Tabor No*. 32, 908 P.2d 125, 130 (Colo. 1995). "This rule recognizes that the particular words chosen by the Title Board should not prejudice electors to vote for or against the proposed initiative merely by virtue of those words' appeal to emotion." *In re Ballot Title 1999-2000 No. 258(A)*, 4 P.3d at 1100. "By drawing attention to themselves and triggering a favorable [or unfavorable] response, catch phrases generate support for a proposal that hinges not on the content of the proposal itself, but merely on the wording of the catch phrase." *Id*. For example, it was impermissible to state in the title to a measure limiting bilingual education that it would teach English "as rapidly and effectively as possible" because they "mask the policy question regarding whether the most rapid and effective way to teach English to non-English speaking children is through an English immersion program." *Id*. at 1100.

The entire purpose of C.R.S. § 1-40-106 is to appeal to voters' emotions by recharacterizing the measures as a cut in education and health care spending, for the purpose of encouraging voters to vote against the measure, feelings that would be very different if voters appreciated that they would lose at most a few dollars off their TABOR refund. Representative Chris Kennedy,

13

explained H.B. 21-1321 as a "stop-the-bleeding" bill: "What we've seen, increasingly, is that Republicans, who have not been successful at winning majorities here at the Capitol in recent years, are increasingly turning their attention to the ballot and using that as a way to try to get government closer to the size that can be drowned in a bathtub," he said. "We'd prefer that government not drown in the bathtub.  We'd prefer that ballot measures don't continue to chip away at our ability to fund our public schools and the other priorities that the voters of the state care about."  Jesse Paul, Colorado Democrats Want to Use One of TABOR's Most Effective Tax-Halting Mechanisms for Themselves, The Colorado Sun, May 21, 2021.  There has been no effort to disguise the fundamentally politicized agenda underlying this legislation, which completely contrary to the clarity, neutrality and citizen control envisioned by the Colorado Constitution.

For the reasons stated above, there is a reasonable likelihood that Plaintiffs will prevail on the merits in this litigation and vindicate their fundamental constitutional right to "to think as you will and to speak as you think," *Whitney v. California*, 274 U.S. 357, 375 (1927), and to "present their message undiluted by views they [do] not share," *303 Creative LLC v. Elenis*, No. 21-476, 600 U. S. ___ (June 30, 2023), slip. op at 8.

**B. Plaintiffs can also satisfy the other requirements for a preliminary injunction.**

The application of the final three prongs of the preliminary injunction standard is straightforward.  The public importance of this matter is beyond dispute.  "The titles and summary are critical to the voters' accurate understanding of a proposal."  *In re Ballot Title 1999-2000 No. 258(A)*, 4 P.3d at 1099.  And the urgency is also clear.  Petitions are due – with signatures – on October 19 and November 20 of this year.  At that point, assuming Plaintiffs can obtain the request number of signatures notwithstanding the false and misleading title mandated by C.R.S. § 1-40-106 as codified in Colorado law, Plaintiffs will be forced to choose between abandoning their petitions, which they have a right under the Colorado Constitution to present to the voters, and

14

letting ballots go out to voters with significant mischaracterizations of their position, which the voters will then read and vote upon. This is an irreparable injury and adverse to the public interest.

Right now, Plaintiff Advance Colorado is approved to have petition circulators showing this petition to potential voters with the inaccurate language, leaving Plaintiffs trying to figure out how to explain what the initiative would really accomplish and why its title is wrong without irritating busy passersby. This is also compelled speech in violation of the First Amendment and an irreparable injury which Advance Colorado cannot avoid if it wishes to collect the necessary signatures in time to exercise its constitutional right to place a citizen initiative on the ballot.

Finally, there is no danger of prejudice to the opposing party because this case does not involve any disputed questions of material fact that would require additional discovery or development.

## CONCLUSION

Plaintiffs respectfully request that this Court enter a preliminary injunction order in this matter requiring the Secretary of State Griswold to convene the Title Board to reauthorize the ballot titles for Advance Colorado's Initiatives 21 and 22, removing the false language mandated by C.R.S. § 1-40-106. Plaintiffs further request that the Court enter such order in time for more accurate titles to be set to allow Plaintiffs to make accurate speech to Colorado voters as soon as possible as they solicit signatures for Initiatives 21 and 22 and in any event, before the petitions are required to be turned in to the Secretary of State on October 19 and November 20, 2023 so that false and inaccurate statements are not presented to Colorado voters on the 2024 ballots.

**GREENBERG TRAURIG, LLP**
*s/Jennifer H. Weddle*
Troy A. Eid
Jennifer H. Weddle
Harriet McConnell Retford
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
(303) 572-6500
eidt@gtlaw.com
weddlej@gtlaw.com
retfordh@gtlaw.com
*Counsel to Plaintiffs*

### D.C. COLO.LCivR 7.1(a) Certification

This lawsuit was served on Defendants and upon the Colorado Attorney General on August 8, 2023, but no counsel has yet entered any appearance on behalf of Defendants. Therefore, pursuant to D.C.COLO.LCivR 7.1(a), on August 14, 2023, the undersigned contacted the Attorney General's Office, as well as counsel for Defendants by emailing with their respective offices (Governor's Chief Counsel, Ms. Kara Veitch, and Deputy Secretary of State Christopher Beall) providing detailed substantive messages soliciting Defendants' positions with respect to Plaintiffs' Motion for Preliminary Injunction and requesting counsel to be identified.

The undersigned also emailed Colorado Attorney General Phil Weiser and Chief Deputy Attorney General Natalie Hanlon Leh on August 14, 2023 to the same effect and asking whether there was any attorney within the Attorney General's Office to whom correspondence regarding Plaintiffs' case might be better directed.

The undersigned received prompt responses from Defendants and the Attorney General's Office identifying First Assistant Attorney General LeeAnn Morrill and Senior Assistant Attorney General Michael Kotlarczyk as the attorneys who will be representing Defendants in this matter.

On August 15, 2023, Mr. Kotlarczyk informed the undersigned that Defendants oppose this Motion.

Dated this August 16, 2023:

*s/ Jennifer H. Weddle*
Jennifer H. Weddle

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August 2023, a true and correct copy of the foregoing **MOTION FOR PRELIMINARY INJUNCTION** was filed by ECF and by served by email to the following given that the Attorney General's Office personnel handling the case have not yet entered their appearances:

Secretary of State of Colorado
1700 Broadway, #550
Denver, CO 80290

*For Defendant JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,*

State of Colorado Governor's Office
200 East Colfax Avenue
Denver, CO 80203

*For Defendant JARED POLIS, in his official capacity as Governor of Colorado,*

First Assistant Attorney General LeeAnn Morrill (leeann.morrill@coag.gov)
Senior Assistant Attorney General Michael Kotlarczyk (Mike.Kotlarczyk@coag.gov)
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203

                                               *s/ Jennifer H. Weddle*
                                               Jennifer H. Weddle